Estate of William R. Elfers, Deceased, Edward D. Bryde, Executor v. Commissioner.
Estate of William R. Elfers v. Commissioner
Docket No. 6975.
United States Tax Court
1946 Tax Ct. Memo LEXIS 184; 5 T.C.M. (CCH) 387; T.C.M. (RIA) 46118; May 23, 1946
*184 Arthur H. Amon, Esq., for the petitioner. H. D. Thomas, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency in estate tax in the amount of $13,103.53. The petitioner contends that the Commissioner erred, first, in including in the gross estate proceeds of certain insurance policies which the decedent irrevocably transferred to a trust on July 6, 1934 retaining none of the incidents of ownership and, second, that he erred in including in the gross estate the corpus of an irrevocable trust created by the decedent on September 27, 1934. The petitioner contends that there has been an overpayment of tax. The Commissioner by an amended answer claims that he erred in not including in the gross estate items amounting to $18,572.06 representing a part of the trust created on September 27, 1934. He claims an increased deficiency. All of the facts have been stipulated. The estate tax return was filed with the collector of internal revenue for the first district of New York. [The Facts] The decedent died on October 26, 1940 at the age of 65. His survivors were an unmarried daughter, age 32, and a son, age 26. The *185 son was married, but had no children at the date of his father's death. Since then two children have been born to the son and his wife. The decedent created a trust on July 6, 1934 naming as trustees a bank and an individual. He transferred to the trust ten policies of life insurance, all of which had been taken out by the decedent on his own life a number of years previously. The trust was irrevocable and the decedent retained none of the incidents of ownership in the policies. The decedent agreed to furnish and furnished the trustees with money sufficient to pay the net premiums on the policies. The trustees were given the right to deal with the policies in various ways if the decedent failed to furnish sufficient money to pay the premiums. The trustees were to divide the proceeds of the policies into two equal parts and to hold one part for the benefit of the decedent's daughter and the other part for the benefit of his son, with remainder to their issue. In case either beneficiary died without issue the corpus of that trust was to be paid over to the other beneficiary or to the surviving issue of that beneficiary. The trust agreement made no provision for any of the corpus of *186 the trust ever to return to the decedent or his estate. The trust agreement was in effect at the time of the decedent's death. The decedent created another trust on September 27, 1934 and transferred certain property to it. The provisions in regard to the beneficiaries were like those in the earlier trust. The trust agreement made no provision for any of the trust corpus to return to the decedent or his estate. It was irrevocable. This trust agreement was in effect at the time of his death. The stipulation shows the extent to which the corpus of this trust has been included in the gross estate in the determination of the deficiency. The Commissioner included the corpus of the trusts in the decedent's gross estate upon the ground that he retained a possibility of reverter and therefore the transfers took effect at his death. No estate granted was contingent upon his death. The condition of the decedent's health at the time he created the two trusts was not such as to lead him to contemplate death. The trusts were not created in contemplation of death. [Opinion] The respondent first contends that the property in the two trusts should be included in the decedent's gross estate *187 because he retained a possibility of reverter since the property would revert to the decedent by operation of law in the event that his son and daughter predeceased him without leaving lawful issue. The cases of and and similar cases upon which the respondent relies are not in point. This case is ruled by ; ; Estate of Mary B. and in which the Hallock and Goldstone cases have been distinguished. The respondent next contends that the transfer of the ten policies of life insurance to the trust of July 6, 1934 was made in contemplation of death although he made no such determination and has stipulated that the trust was not created in contemplation of death so far as the condition of the decedent's health was concerned. The burden of proof is upon the respondent. The cases which he cites on this point are cases where it was held as a matter of fact that the transfers were made in contemplation *188 of death. There is no evidence in this record as to the motive or purpose of the decedent in making the particular transfers in 1934 except the stipulation of the parties that the trust was not "created in contemplation of death so far as the condition of the decedent's health was concerned." His age and the ages of the two beneficiaries are also shown and it is stipulated that his wife had already died. The petitioner was only 59 years of age and apparently he and his two children were in good health at the time the trusts were created. It is apparent from the trust instruments that the decedent intended to pay the premiums of the policies as long as he was able to do so, but the trustees had the right to make immediate use of the policies in case he did not pay the premiums. We hold that the transfers were not made in contemplation of death. The respondent also contends that the transfer of the ten policies of insurance to the trust of July 6, 1934 was properly included in the gross estate under 811(g) as it applied to a decedent dying prior to October 21, 1942. His argument in this connection is that the decedent had an incident of ownership at the time he died consisting of a *189 possibility of reverter of the trust property to him by operation of law. Incidents of ownership which would justify including insurance in the gross estate are defined in Regulations 105 as "the right of the insured or his estate to its economic benefits, the power to change the benficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc." The record is clear that the decedent retained no interest in the policies which in any way resembles the above description of legal incidents of ownership. We hold against this contention upon authority of the cases cited upon the first point above. See also . Decision will be entered under Rule 50.